UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO.: 07-21404-CIV   COOKE/BANDSTRA

ROYALE GREEN CONDOMINIUM
ASSOCIATION, INC.,

    *Plaintiff*,

v.

ASPEN SPECIALTY INSURANCE
COMPANY,

    *Defendant*.

    _____/

## ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

**THIS CAUSE** is before the Court on Plaintiff's Motion for Partial Summary Judgment [DE 32]. The question is the application of a deductible in the insurance policy at issue. Plaintiff argues that the policy should be interpreted as applying a single, one-time-per-occurrence deductible that is essentially subtracted once from the aggregate assessed damage value of all damaged buildings covered under the policy. Defendant contends that the deductible applies separately to each building and no payment is required except when the damage to a building exceeds the minimum deductible for that building. Both parties are in agreement that construction of the insurance policy is a question of law, appropriate for summary disposition.

### I.    BACKGROUND

The relevant background of this case has been set forth previously in several documents, including this Court's Order on Defendant's Motion to Dismiss Count II [DE 51]. The essential background, relevant to this particular motion, is as follows: Plaintiff Royale Green Condominium Association, Inc. (Plaintiff or "Royale") had insurance coverage through Defendant

Aspen Specialty Insurance Company (Defendant or "Aspen"). During the period when this insurance policy was in full force and effect, Hurricane Wilma caused damage to Plaintiff's property covered by the policy. As a result of this damage, Royale submitted an insurance claim, to which Aspen responded by assigning property damage valuations and tendering payment. This payment was arrived at by taking into account the insured value of the properties, depreciation, the assessed damages, and the insurance deductible. In addition to the deductible issue, Plaintiff contests the amount and valuation of the assessed damages. The only question to be resolved on this Motion is what is the correct application of the deductible.

## II.     RELEVANT STANDARDS

### A.     Summary Judgment

Summary judgment is proper when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue as to any material fact and compels judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Only the existence of a genuine issue of material fact, as opposed to a simple factual dispute, will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). No genuine issue of material fact exists when the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

### B.     Construction of an Insurance Policy

The construction of an insurance policy, and in particular any ambiguity within it, is a question of law. *See Strama v. Union Fidelity Life Ins. Co.*, 793 So.2d 1129, 1132 (Fla.App. 1 Dist. 2001) ("The interpretation of a contract is a matter of law to be determined by the court.")

(citation omitted).[1]

### III. ANALYSIS

Generally, "[i]nsurance contracts are construed in accordance with the plain language of the policies as bargained for by the parties. Ambiguities are interpreted liberally in favor of the insured and strictly against the insurer who prepared the policy." *Prudential Property and Cas. Ins. Co. v. Swindal*, 622 So.2d 467, 470 (Fla. 1993). An ambiguity in a provision only exists when the parties express competing, reasonable interpretations of that provision. *Travelers Ins. Co. v. Smith*, 328 So.2d 870, 872 (Fla. 3rd DCA, 1976) ("[I]f ambiguity exists because of the existence of more than one possible interpretation, the ambiguity must be resolved against the insurance company that drafted the particular language in question and in favor of the insured; and when the terms of an insurance policy are susceptible of two interpretations, that interpretation which sustains the claim for indemnity must be adopted."). If there is no ambiguity, the contract must be construed according to its plain language and given effect as written. Further, "[i]n construing an insurance policy, courts should read the policy as a whole, endeavoring to give every provision its full meaning and operative effect. Indeed, a single policy provision should not be considered in isolation, but rather, the contract shall be construed according to the entirety of its terms as set forth in the policy and as amplified by the policy application, endorsements, or riders." *Gen. Star Indem. Co. v. West Florida Village Inn, Inc.*, 874 So.2d 26, 30 (Fla. 2nd DCA 2004) (internal citations omitted).

---

[1] As this is a diversity case, I apply Florida substantive law, unless federal constitutional or statutory law is to the contrary. *Insurance Co. of North America v. Lexow* 937 F.2d 569, 571 (11th Cir. 1991) (quoting *Salve Regina College v. Russell*, 499 U.S. 225 (1991)). "In applying state law, a federal court must adhere to decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise." *Lexow*, 937 F.2d at 571 (quoting *Silverberg v. Paine, Webber, Jackson & Curtis, Inc.*, 710 F.2d 678, 690 (11th Cir.1983)) (internal quotation marks omitted).

In short, Plaintiff argues that the deductible mechanism allows Defendant to deduct 5% of the total insured values ("TIV") of a building, or $100,000, whichever is larger, once for a claim caused by a single occurrence, even if the occurrence caused losses to multiple buildings. Defendant counters that the "per building, per occurrence" language means that the deductible is to be applied to each building that suffered a loss during the occurrence. The dispute and question of interpretation arises from a special condition listed on the Summary of Insurance and Special Provisions and examples set forth in the Condominium Associations Coverage Form . The special condition states: "The application of a 'per building' deductible, if shown above, is intended to apply to the TIV (total insurable values) of the entire building, *inclusive of all buildings* and contents."   The relevant portion of the policy was set forth in the Summary of Insurance and Special Provisions as:

| Peril | Attachment | Per | Minimum |
|---|---|---|---|
| All Other Perils (AOP) | $5000.00 | Occurrence | $ |
| Windstorm or Hail | 5% of TIV | Per Building Per Occurrence | $100,000.00 |

Special Conditions:

\*\*The application of a "per building" deductible, if shown above, is intended to apply to the TIV (total insured values) of the entire building, inclusive of all buildings and contents.

The policy is not particularly simple, but requiring analysis to determine the scope and meaning of the contract does not mean an ambiguity exists. *See State Farm Fire & Cas. Co. v. Metropolitan Dade County*, 639 So.2d 63, 66 (Fla. 3rd DCA 1994); *Gen. Star Indem.,* 874 So.2d at 31.  Relying on just the "per building, per occurrence" and special provision clauses, the most logical interpretation is that the deductible is equal to 5% of the TIV per building, with a

minimum of $100,000. That is, if the assessed damage to a single building did not exceed the larger of 5% of TIV or $100,000, no payment would be made by the insurer on that building. The same calculation would apply to each of the buildings affected by Hurricane Wilma. Therefore, the deductible would be in effect for each building that sustained damage. Plaintiff relies on the special condition and two deductible calculation examples set forth in the Summary of Insurance and Special Provisions, Condominium Associations Coverage Form [DE 40, Ex. D], to argue that despite the "per building, per occurrence" language, the deductible was to be applied only one time per occurrence, here Hurricane Wilma, regardless of the fact that the single policy covered multiple buildings.

A.  **There Is No Ambiguity In The Application Of The Deductible**

Although Plaintiff has argued that the special condition and examples create an ambiguity that should be construed against the insurer, Aspen, Plaintiff's construction is not reasonable and does not create the necessary ambiguity. The language of the special provision cannot be reasonably interpreted to mean anything other than that the "per building" deductible is calculated based on the total insured value of the entire, individual building. The inclusion of the clause--"inclusive of all buildings and contents"--appears to be nothing more than a scrivener's error. The secondary clause does not grammatically or logically follow the first clause, and it adds nothing to the meaning of the sentence. Moreover, as pointed out in Plaintiff's reply brief, and cited to in Defendant's response, a previous case in this District dealt with the construction of another one of Defendant's insurance policies. *See Beverly Hills Condominium 1-12, Inc., v. Aspen Specialty Ins. Co.*, 2007 WL 1183939 at *1-*2 (S.D.Fla., Feb 1., 2007) (slip op.). That case dealt with the meaning of "TIV", but language in the contract is helpful here. The policy stated:

> The following deductible amounts shall apply to each claim for loss

or damage under this Policy in respect to the loss category indicated:

| Peril | Attachment | Per | Minimum |
|---|---|---|---|
| All other Perils (AOP) | $5,000 | Occurrence | $ |
| Windstorm or Hail | 5% of TIV | Location ** | $ |

Special Conditions:
> ** *The application of a "per location" deductible, if shown above, is intended to apply to the TIV (total insurable values) of the entire premises, inclusive of all buildings, and is NOT applicable to a series of individual buildings* regardless of the labeling in the statement of values on file with the Company.

A simple comparison of the italicized language above to the special provision in this case makes it obvious that whomever drafted the policy currently at issue failed to properly edit the language to conform with the differences in type of coverage, as "entire *building*, inclusive of all *buildings*" does not properly belong in either policy. As such, the Court does not find that this special provision creates an ambiguity that should be construed against the Defendant. *See Travelers Ins. Co.*, 328 So.2d at 872 (requiring a reasonable interpretation to create an ambiguity). Plaintiff's attempt to turn the "per building, per occurrence" language of the policy in this case into the "per location" language of the *Beverly Hills* case fails. The proposed construction is untenable.

Plaintiff's argument based on the examples in the Condominium Associations Coverage Form is no more persuasive. The relevant portions of the Condominium Associations Coverage Form[2] are as follows:

---

[2]The Condominium Associations Coverage Form is listed as applicable on the Schedule of Applicable Forms. *See* DE 40-5.

D.  Deductible

In any one occurrence of loss or damage (herein-after referred to as loss), we will first reduce the amount of loss required by the Coinsurance Condition or the Agreed Value Optional Coverage. If the adjusted amount of loss is less than or equal to the Deductible, we will not pay for that loss.  If the adjusted amount exceeds the Deductible, we will then subtract the Deductible from the adjusted amount of loss, and will pay the resulting amount or the Limit of Insurance, whichever is less.

When the occurrence involves loss to more than one item of Covered Property and separate Limits of Insurance apply, the losses will not be combined in determining application of the Deductible. But the Deductible will be applied only once per occurrence.

Example No. 1:

    (This example assumes there is no coinsurance penalty.)

Deductible:                               $  250

Limit of Insurance -- Bldg. 1: $60,000

Limit of Insurance -- Bldg. 2: $80,000

Loss to Bldg. 1:                    $60,100

Loss to Bldg. 2:                    $90,000

The amount of loss to Bldg. 1 ($60,100) is less than the sum ($60,250) of the Limit of Insurance applicable to Bldg. 1 plus the Deductible.

The Deductible will be subtracted from the amount of loss in calculating the loss payable for Bldg. 1:

$60,100

-   250
_____
$59,850 Loss Payable -- Bldg. 1

> The Deductible applies once per occurrence and therefore is not subtracted in determining the amount of loss payable for Bldg. 2. Loss payable for Bldg. 2 is the Limit of Insurance of $80,000. Total amount of loss payable: $59,850 + 80,000 = $139,850.
>
> Example No. 2
>
> (This example, too, assumes there is no coinsurance penalty.)
> The Deductible and Limits of Insurance are the same as those in Example No. 1.
>
> Loss to Bldg. 1:          $70,000
>
> (exceeds Limit of Insurance plus Deductible)
>
> Loss to Bldg. 2:          $90,000
>
> (exceeds Limit of Insurance plus Deductible)
>
> Loss Payable -- Bldg. 1:  $60,000
>
> (Limit of Insurance)
>
> Loss Payable -- Bldg. 2:  $80,000
>
> (Limit of Insurance)
>
> Total amount of loss payable: $140,000

At first blush the examples appear to support Plaintiff's argument that the Deductible should only have been subtracted once. Upon a close reading of the language and examination of the examples, however, I am convinced that the Plaintiff's argument cannot be maintained.

The two paragraphs preceding the examples must be read together to give the examples context. The most important line in the first paragraph is "[i]f the adjusted amount of loss is less than or equal to the Deductible, we will not pay for that loss." The examples emphasize this statement, as both examples deal only with situations where the loss far exceeds the deductible; a

situation not present in this case with the current (albeit disputed) assessed damage valuations. Both lines of the second paragraph are important. It is not disputed that there was loss to more than one item of covered property, nor that there exist separate limits of insurance. What takes analysis is the statement that "losses will not be combined in determining application of the Deductible. But the Deductible will be applied only once per occurrence." Plaintiff bases its argument on only the last line, and argues that since Hurricane Wilma was the only occurrence, the Deductible should only have been applied once. Incorporating the preceding line, however, reveals that the intent of the paragraph is to reinforce the previous paragraph's limitation that only adjusted amounts exceeding the Deductible will be paid on. In context, the plain meaning of "losses will not be combined in determining application of the deductible" is that losses to separate items of covered property, if not individually exceeding the Deductible, will not be aggregated so that the combined loss does exceed the Deductible, thereby requiring payment even though no loss on its own would have. This does not conflict with the "Deductible will only be applied once per occurrence" language because the Deductible was in fact applied once, per building, per occurrence.

The mathematical examples are not helpful here because they deal only with the situation where the deductible is exceeded by the loss. Moreover, the examples are simplified or generic versions of potential claims and do not take into account the specific language of this policy which, as discussed *supra*, for any occurrence applies a deductible to each covered building.

   B.   There Is No Ambiguity In The Amount Of the Deductible

Having thus concluded that the policy does call for separate deductibles to apply to each covered building, the question remains, what is the proper amount of that Deductible. Again, there is no ambiguity. Plaintiff puts forth two separate interpretations, both concluding that there

is only a $100,000 Deductible.  First, Plaintiff compares the policy language in *Beverly Hills* to the present language and claims that the Defendant's inclusion of a minimum amount ($100,000) was a contractual modification overriding the 5% of TIV.  This reading is unsupported on the face of the contract[3].  Second, Plaintiff argues that because there is a main policy (the policy at issue) and Surplus Line Policy, the $100,000 deductible in the main policy is a one-time deductible applied to any claims not exceeding the $5,000,000 occurrence limit of that policy.  This interpretation too is unfounded, especially in light of the finding that separate deductibles per building apply.  Defendant, on the other hand, has cogently argued that the Deductible is 5% of TIV per building, with a minimum of $100,000.  Five-percent of TIV per building, based on the $1,465,000 limit of insurance for each building, is $73,250 per building.  As $100,000 exceeds the 5% of TIV, it is therefore the applicable Deductible per building.

**IV.   CONCLUSION**

For the reasons set forth above, it is hereby

**ORDERED and ADJUDGED** that Plaintiff's Motion Summary Judgment With Respect To Construction Of Insurance Policy [DE 32] is **DENIED.**  The short version of the policy is as follows:

> A Deductible of 5% of TIV or $100,000, whichever is greater, shall be applied to each building, per occurrence, with no payment to be made to the insured unless the adjusted assessed damage to an individual building exceeds the Deductible for that building.

---

[3]Additionally, Plaintiff's reliance on *Terra Adi Int'l. Dadeland, LLC v. Zurich Am. Ins. Co.*, 2007 WL 675971 (S.D.Fla. March 1, 2007), to support this argument is misplaced.  *Terra Adi* found that the phrase "total insured values at risk" created ambiguity regarding whether "at risk" referred to the total value of the property, or just the value of policy sub-limit.  This is not dispositive here, as the language differs markedly, and the policy here specifies TIV per building.

**DONE AND ORDERED** in Chambers, at Miami, FL this 14th day of May 2008.

_____
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*The Honorable Ted E. Bandstra*
*Counsel of Record*