UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO.: 07-21404-CIV-COOKE/BANDSTRA

ROYALE GREEN CONDOMINIUM
ASSOCIATION, INC.,

    *Plaintiff*,

v.

ASPEN SPECIALTY INSURANCE
COMPANY,

    *Defendant*.

_____/

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

**THIS CAUSE** is before the Court upon Defendant's Motion for Partial Summary Judgment [DE 106].  The questions before the Court are: (1) whether the insurance policy between the parties is a named perils policy or an all risks policy; (2) whether Defendant must pay for the entire cost of roof replacement when the roof sustained partial damage; (3) whether the scope of insurance coverage extends to the walls, floors, and other components of individual condominium units; and (4) whether gooseneck components are considered part of Plaintiff's air conditioning system or structural roof.

Defendant argues that the policy is a named perils policy and Plaintiff has the burden of pleading that losses were due to a stated cause of loss in the policy.  Further, Defendant contends that the total replacement cost of building roofs is not covered when the source of the entire replacement requirement is an ordinance or law not incorporated in the policy.  Additionally, Defendant argues that coverage of individual condominium units is limited by Fla. Stat. § 718.111(11)(b)(3) which is included in the policy.  Lastly, Defendant argues that gooseneck

components are part of the air conditioning system, and therefore, coverage for damage to the buildings' interior areas is excluded since water entered through a manmade device. Plaintiff contends that the insurance policy is an all risks type of policy, thereby eliminating Plaintiff's burden of pleading. Plaintiff asserts that Defendant is, based upon Florida Building Code § 1521.4, obligated to pay for the cost to replace the entire roof where more than 25% of the roof is damaged. Further, Plaintiff argues that the policy provides hurricane protection, and thus, Fla. Stat. § 718.111(11)(b)(3) should not apply. Lastly, Plaintiff contends that gooseneck components are part of the structural roofs of condominium buildings.

## I. BACKGROUND

The relevant background of this case has been set forth previously in several documents, including this Court's Orders on Defendant's Motion to Dismiss Count II [DE 51] and Plaintiff's Motion for Summary Judgment with Respect to Construction of Insurance Policy [DE 64]. Plaintiff Royale Green Condominium Association, Inc. (Plaintiff or "Royale") had insurance coverage through Defendant Aspen Specialty Insurance Company (Defendant or "Aspen"). During the period when this insurance policy was in full force and effect, Hurricane Wilma caused roof and interior damage to Royale's condominium buildings. Aspen and Royale dispute the extent of insurance coverage for roof and interior damage. Further, the parties contest whether water entered through the air conditioning system or the structural roof.[1]

---

[1] When discussing the manner water entered into the building the parties refer to the term "gooseneck," see *infra*. The Court understands the term gooseneck to refer to a fitting component which connects the air conditioning outflow to the ventilation system of the buildings.

## II. RELEVANT STANDARDS

### A. Summary Judgment

Summary judgment is proper when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue as to any material fact and compels judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Only the existence of a genuine issue of material fact, as opposed to a simple factual dispute, will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). No genuine issue of material fact exists when the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

### B. Construction of an Insurance Policy

The construction of an insurance policy, and in particular any ambiguity within it, is a question of law. *See Strama v. Union Fidelity Life Ins. Co.*, 793 So. 2d 1129, 1132 (Fla. 1st DCA 2001) ("The interpretation of a contract is a matter of law to be determined by the court.") (citation omitted).[2] This Court has previously stated, see [DE 64], that with regard to application of the deductible, no ambiguity exists.

## III. ANALYSIS

### A. Type of Policy Between Royale and Aspen

Generally, "[i]nsurance contracts are construed in accordance with the plain language of

---

[2]As this is a diversity case, I apply Florida substantive law, unless federal constitutional or statutory law is to the contrary. *Insurance Co. of North America v. Lexow* 937 F.2d 569, 571 (11th Cir. 1991) (quoting *Salve Regina College v. Russell*, 499 U.S. 225 (1991)). "In applying state law, a federal court must adhere to decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise." *Lexow*, 937 F.2d at 571 (quoting *Silverberg v. Paine, Webber, Jackson & Curtis, Inc.*, 710 F.2d 678, 690 (11th Cir.1983)) (internal quotation marks omitted).

the policies as bargained for by the parties. Ambiguities are interpreted liberally in favor of the insured and strictly against the insurer who prepared the policy." *Prudential Property and Cas. Ins. Co. v. Swindal*, 622 So. 2d 467, 470 (Fla. 1993). An ambiguity in a provision only exists when the parties express competing, reasonable interpretations of that provision. *Travelers Ins. Co. v. Smith*, 328 So. 2d 870, 872 (Fla. 3d DCA, 1976) ("[I]f ambiguity exists because of the existence of more than one possible interpretation, the ambiguity must be resolved against the insurance company that drafted the particular language in question and in favor of the insured; and when the terms of an insurance policy are susceptible of two interpretations, that interpretation which sustains the claim for indemnity must be adopted."). "An ambiguity exists in an insurance policy only when its terms make the contract subject to different reasonable interpretations . . . [A]mbiguity is not invariably present when analysis is necessary to interpret the policy." *Blue Shield of Fla., Inc. v. Woodlief*, 359 So. 2d 883, 884 (Fla. 1st DCA 1978). If there is no ambiguity, the contract must be construed according to its plain language and given effect as written. Further, courts should read an insurance policy as a whole, "endeavoring to give every provision its full meaning and operative effect. Indeed, a single policy provision should not be considered in isolation, but rather, the contract shall be construed according to the entirety of its terms as set forth in the policy." *Gen. Star Indem. Co. v. West Fla. Village Inn, Inc.*, 874 So. 2d 26, 30 (Fla. 2d DCA 2004) (internal citations omitted).

Defendant seeks a declaration that the policy is a named perils policy, while Plaintiff argues it is an all risks policy. "[A]n all-risks policy . . . 'provid[es] coverage for all direct losses not otherwise excluded,' while conversely, a named-perils policy covers only those stated perils named as included." *Fisher v. Certain Interested Underwriters at Lloyds Subscribing Contract #242/99*, 930 So. 2d 756, 758 (Fla. 4th DCA 2006) (citation omitted). The type of policy

determines whether a plaintiff must demonstrate that loss occurred by a cause covered in the policy. "An all risk policy . . . benefits the insured in that the policy covers any loss without putting upon the insured the burden of proving that the loss was due to a peril falling within the policy's coverage." *Int'l Ship Repair and Marine Services, Inc. v. St. Paul Fire and Marine Ins. Co.*, 944 F. Supp. 886, 892 (M.D. Fla. 1996). If the policy is deemed an all risks policy, the insured must prove only that the damage to the property occurred while the policy was in effect, "with the burden then shifting to the insurer to prove that the loss arose from a cause that is excluded under the policy." *Id.* If the policy is a named perils policy, however, the insured has the burden of proving that the damage occurred by a covered cause. *Morrison Grain Co., Inc. v. Utica Mut. Ins. Co.* 632 F.2d 424, 429 (5th Cir. 1980).[3]

The insurance contract before the court does not explicitly state whether the policy is named perils or all risks. Plaintiff relies upon the following clause in the coverage section of the policy to make the assertion that the policy covers all risks:

> We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

(Insurance Policy at 8, Condominium Association Coverage Form at 1)

Plaintiff asserts that "[t]he word 'any' means what it says and says what it means." (Pl.'s Mem. of law in Opp'n to Def.'s Mot. for Partial Summ. J. at 5). Further, Plaintiff contends, "[i]f insurance company wanted to use a more limiting word, such as 'only' or, conversely, specifically provide in the Policy that it was issuing a 'named peril' Policy, it could have done so." *Id*. at 5-6. Plaintiff's contention is unpersuasive. As stated above, an insurance contract

---

[3] The Eleventh Circuit in *Bonner v. City of Prichard*, 661 F.2d 1206,1207 (11th Cir. 1981), adopted as binding precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

must be read as a whole, "construed according to the entirety of its terms as set forth in the policy." *Gen. Star Indem. Co.,* 874 So. 2d at 30. Simply reading the above clause closely shows the error in Plaintiff's argument. "Any" necessarily modifies "covered cause of loss." The only reasonable way to read that clause is to understand that Aspen will pay for damage to property, when that damage was due to a specifically and explicitly named cause of loss, covered in the policy. The Covered Cause of Loss section of the policy lists eleven discrete covered perils, with various exceptions, detailing conditions of coverage. (Insurance Policy at 21-2). By referencing the Covered Cause of Loss section in the policy, it is clear that the policy specifies which perils are covered under the policy.

Furthermore, the word "any" does not of itself suggest that this insurance contract is an all risks policy. *See Int'l Ship Repair*, 944 F. Supp. at 891-2 (concluding that the policy provided all risks coverage based on language in the policy to the affect of coverage for "other causes of whatsoever nature" and "all perils losses, and misfortunes"). I find that the mere use of the word "any," when read in context in the present policy, does not remotely rise to the level needed to construe the insurance contract as an all risks policy. Thus, I conclude that the policy is a named perils policy and Plaintiff will have to bear the burden of proving the losses suffered were due to a peril covered by the policy.

      B.     **Applicability of Florida Building Code Section 1521.4**

Royale and Aspen dispute whether Florida Building Code § 1521.4 controls the amount Aspen must pay toward repair costs for roof damages. Section 1521.4 of the Florida Building Code states:

> Not more that 25% of the total roof area or roof section of any existing building or structure shall be repaired, replaced or recovered in any 12 month period unless the entire existing roofing system or roof section is replaced to conform to the

>     requirements of this code.

Fla. Building Code § 1521. 4, *available at* http://www2.iccsafe.org/states/florida_codes/ (follow Chapter 15-Roof Assemblies and Rooftop Structures hyperlink).

Defendant contends that insurance coverage is limited to the terms of the contract and not affected by the building ordinance. Specifically, Defendant argues that the policy does not "provide coverage for full roof replacement when said replacement is due solely to the enforcement of 'ordinance or law' requirements." (Def.'s Mot. for Partial Summ. J at 8). The policy explicitly excludes causes of loss based upon the enforcement of any ordinance or law:

>     1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.
> 
>        a. **Ordinance Or Law**
>           The enforcement of any ordinance or law:
>           (1) Regulating the construction, use or repair of any property; or
>           (2) Requiring the [t]earing down of any property, including the cost of removing its debris.

(Insurance Policy at 22).

However, the policy does provide for some additional coverage when the insured has suffered a loss and must comply with an ordinance or law:

>     e. **Increased Cost Of Construction**
>        . . . .
>        (2) In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with enforcement of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in e.(3) through e.(9) of this Additional Coverage.

(Insurance Policy at 11, Condominium Association Coverage Form at 4).

The relevant limitations state:

>     The most we will pay under this Additional Coverage, for each described building insured under this Coverage Form, is $10,000 or 5% of the Limit of

>Insurance applicable to that building, whichever is less.  If a damaged building is covered under a blanket Limit of Insurance which applies to more that one building or item of property, then the most we will pay under this Additional Coverage, for that damaged building, is the lesser of: $10,000 or 5% times the value of the damaged building as of the time of loss times the applicable coinsurance percentage.

(Insurance Policy at 12, Condominium Association Coverage Form at 5).

Plaintiff argues that the additional coverage provision should only apply to ordinances or laws enacted after the effective date of the policy.  Therefore, contends Plaintiff, an established ordinance or regulation in effect at the time the policy was entered into, such as the Florida Building Code, should not be limited by the additional coverage limitation.  Plaintiff states: ". . . . Association has maintained, and continues to maintain, that all of the [roofs] are required to be replaced, all of which is in accordance with the prevailing law, or the 2001 Florida Building Code, that had been in full force and effect many years prior to the effective date of the Policy." (Pl.'s Mem. of law in Opp'n to Def.'s Mot. for Summ. J. at 7).  Plaintiff argues that the exclusion provision only applies to ordinances or laws created after the effective date of the policy.  Plaintiff relies upon the principle that laws which affect substantive rights, liabilities and duties, should be applied prospectively.  *Id.* at 6.  Further, Plaintiff relies upon *State Farm Fire & Cas. Co. v. Metropolitan Dade County*, 639 So. 2d 63 (Fla. 3d DCA 1994), to support the proposition that an ordinance or law created after the effective policy date does not control.  Therefore, Plaintiff urges this Court to interpret the contract as:

>For any new law or ordinance enacted after the Effective Date of the Policy that results in an increased cost to comply with the enforcement of the law or ordinance, INSURANCE COMPANY agrees to pay for the increased cost of construction in an amount that is not in excess of either $10,000 or 5% of the Limit of Insurance applicable to that building, whichever is less.

(Pl.'s Mem. of law in Opp'n to Def.'s Mot. for Summ. J. at 9).

Plaintiff acknowledges that this Court must read the policy in accordance with its plain language, without rewriting its terms. (Pl.'s Mem. of law in Opp'n to Def.'s Mot. for Summ. J. at 9). However, Plaintiff, when urging the Court to construe the contract as stated above, is essentially asking the Court to rewrite the contract. The law and ordinance provision before this Court is clear: "We will not pay for loss or damage caused directly or indirectly by . . . [t]he enforcement of any ordinance or law . . . [r]egulating the construction, use or repair of any property . . . ." (Insurance Policy at 22). This provision refers to all laws and ordinances; the policy does not distinguish between regulations in effect at the inception of the policy and those enacted after the effective policy date. Since the limitation on coverage to comply with an ordinance or law is unambiguous it would be entirely improper to read new terms into the policy. Moreover, *State Farm*, far from supporting Plaintiff, actually supports Defendant. *See State Farm,* 639 So. 2d at 63 (finding that the policy did not provide coverage for the enforcement of an ordinance or law based upon unambiguous language). I find, based upon the plain language in the policy, that the exclusion provision applies to all ordinances and laws, regardless of when the law or ordinance was enacted.

In addition to contending that the exclusionary provision only applies to ordinances or laws created after the effective policy date, Plaintiff makes the argument that existing law should control the insurance contract. It is true, generally, that established law at the effective date of the policy governs substantive issues arising in an insurance contract. *Hassen v. State Farm Mut. Auto. Ins. Co.* 674 So. 2d 106, 108 (Fla. 1996). However, Plaintiff's argument that established law should control the contract lacks merit because, based upon the explicit terms of the policy, it is clear that Aspen and Royale chose to contract around Florida Building Code § 1521.4. Parties entering into a contract are generally free to exclude coverage when an ordinance or law requires

the insured to comply.  *See Green v. Life & Health of Am.*, 704 So. 2d 1386, 1390 (Fla. 1998) ("It is well settled that, as a general rule, parties are free to contract-out or contract around state or federal law with regard to an insurance contract, so long as there is nothing void as to public policy or statutory law about such contract.") (quoting *King v. Allstate Ins. Co.*, 906 F.2d 1537, 1540 (11th Cir. 1990)) (internal quotation marks omitted).  Based upon the clear exclusionary provision found in the contract, it is apparent that Florida Building Code § 1521.4 does not apply.

  Moreover, Defendant's decision to exclude from full coverage the cost of rebuilding the roof as mandated by the Florida Building Code does not violate Florida law.  In *Regency Baptist Temple v. Ins. Co. of N. Am.,* the court analyzed whether an insurer was obligated to pay for the entire replacement of a roof when the roof sustained only partial damages, but an ordinance required the entire roof to be replaced.  352 So. 2d 1242, 1243 (Fla. 1st DCA 1977).  The policy in *Regency* "explicitly excluded coverage for loss '[o]ccasioned directly or indirectly by enforcement of any local or state ordinance or law regulating the construction, repair or demolition of buildings or structures."  *Id*. at 1243-4.  "The trial court properly concluded that . . . insurance did not extend to expenditures necessary under the ordinance to rebuild the improperly constructed portion of the roof that did not collapse."  *Id*. at 1243.  The *Regency* court stated that the law and ordinance exclusion provision did not violate Florida's valued policy law.  *Id*. at 1244.  Thus, even if Plaintiff can show that windstorm damage occurred and the Florida Building Code requires replacement of entire roofs, insurance payouts to rebuild roofs beyond losses caused by a windstorm are limited by the exclusion and Increased Cost of Construction provisions found in the policy.

### C. Scope of Coverage Based Upon Florida Statutory Law

Defendant argues that the insurance policy does not provide coverage for many articles and parts of individual condominium units. Specifically, Defendant contends that interior condominium unit coverage is limited by an endorsement incorporating Fla. Stat. § 718.111(11)(b)(3) into the policy. (Def.'s Mem. of Law in Supp. of Mot. for Partial Summ. J. at 16). Plaintiff contends that the insurance policy provides hurricane protection, and that such protection covers the damage to interior portions. Plaintiff's principal basis for arguing that the policy provides hurricane protection coverage is deposition testimony of Wayne Marks. (Pl.'s Mem. of law in Opp'n to Def.'s Mot. for Summ. J. at 10).

Florida has precisely defined the definition of a hurricane and the scope of insurance coverage provided by a hurricane insurance policy. Fla. Stat. § 627.4025 (2)(a) provides:

> 'Hurricane coverage' is coverage for loss or damage caused by the peril of windstorm during a hurricane. The term includes ensuing damage to the interior of a building, or to property inside a building, caused by rain, snow, sleet, hail, sand or dust if direct force of the windstorm first damages the building, causing an opening through which rain, snow, sleet, hail, sand, or dust enters and causes damage.

Fla. Stat. § 627.4025 (2)(a).

Florida Statute § 718.111 seeks to regulate condominium associations; subsection 11 mandates that the association provide hazzard insurance. However, Fla. Stat. § 718.111(11)(b)(3) excludes numerous features and components from such coverage. The insurance policy, adopting the language of Fla. Stat. 718.111(11)(b)(3), explicitly excludes coverage for:

> Unit floor, wall and ceiling coverings, electrical fixtures, appliances, air conditioning and heating equipment, water heaters, water filters, built-in cabinets, countertops, window treatments including curtains, drapes, blinds, hardware and other window treatment components, or replacements of any of these items which

>are located within the boundary of the unit and serve only one unit and unit air conditioning equipment that services only a single unit, whether or not it is located within the unit.

(Insurance Policy at 36, incorporating Fla. Stat. § 718.111(11)(b)(3)).

Therefore, the policy between Royale and Aspen excludes coverage for many features and components of an individual condominium unit, which would be covered under a hurricane insurance policy. The provision quoted above is included within the insurance contract with the statement that the "following items will be excluded from coverage." (Insurance Policy at 36). Further, the insurance contract does not state that hurricane coverage is included within the policy. Plaintiff argues, that the interior units are covered by hurricane insurance because, Wayne Marks ("Marks"), an independent adjustor hired by the Defendant, stated it was his opinion that the policy provided hurricane coverage. (Pl.'s Mem. of law in Opp'n to Def.'s Mot. for Summ. J. at 10). Marks was asked twice during the deposition whether he believed the policy included hurricane protection:

>Q: . . . do you believe that there's hurricane coverage within this insurance policy?
>A: There is windstorm or hail coverage within this policy.

(Mark's Dep. at 131).

>Q: And what does 4(c) say?
>A: Windstorm or hail, but not including loss or damage to the interior of any building or structure or the property inside the building or structure caused by rain, snow, sand or dust, whether driven by wind or not, unless the building or structure first sustains wind or hail damage to its roof or walls through which the rain, snow, sand or dust enters. So in answer to your question, unless there is direct damage through which water entered and caused this specific damage . . . there would not be coverage for that water damage.
>Q: So it's you testimony that there's no coverage for that water damage?
>A: No
>Q: But it's you testimony as well that the policy covers -- that there's hurricane coverage under this insurance policy?
>A: Yes

(Mark's Dep. at 135-6).

Marks does not expressly deny or affirm whether he believes hurricane coverage exists when first asked, however, he does state that hurricane coverage exists when asked again. Plaintiff is attempting to use this testimony to establish that Fla. Stat. 627.4025 controls -- not Fla. Stat § 718.111(11)(b)(3) as provided in the policy.  In attempting to establish hurricane coverage, Plaintiff is asking the Court to use parol evidence to analyze an unambiguous contract. "It is well-established that as a general rule, [t]he construction of a written contract is a matter of law to be determined by the court, but, if the wording is ambiguous and the parties present different interpretations, the issue of proper interpretation becomes one of fact, thus precluding summary judgment." *Allen C. Ewing & Co. v. Freedle*, 521 So. 2d 384, 386 (Fla. 1st DCA 1988) *(*quoting *Multitech Corp. v. St. Johns Bluff Inv. Corp.*, 518 So. 2d 427 (Fla. 1st DCA 1988)) (internal quotation marks and emphasis omitted).

Plaintiff's argument that Florida's hurricane damage provision should control based upon evidence outside the four corners of the contract is faulty.[4]  The policy language excluding coverage for condominium interiors is unambiguous and clearly incorporates Fla. Stat. § 718.111(11)(b)(3). (Insurance Policy at 36).  Further, the insurance contract specifically includes coverage for windstorm and hail damage, however, the policy fails to mention hurricane

---

[4]There is no indication that Marks is a Fed. R. Civ. P. 30(b)(6) witness or corporate representative.  Aspen hired Mark's company, Associated Claims Management, to adjust Royale's insurance claim.  The Court sees no reason for Mark's testimony to bind Aspen to the extent Marks interprets the coverage of the policy between Aspen and Royale.  Moreover, since the insurance contract is unambiguous, I see no reason to consider Mark's testimony concerning whether the policy should be construed as providing hurricane insurance.

coverage.[5]  *Id*. at 21.  Since the contract unambiguously specifies limitations of coverage under Fla. Stat. § 718.111(11)(b)(3), the court should not look to deposition testimony to determine if another statute not mentioned in the policy prevails.  *See Kipp v. Kipp*, 844 So. 2d 691, 694 (Fla. 4th DCA 2003) ("[A]lthough the parties submitted a transcript of the dissolution proceedings along with the deposition testimony . . . the trial court's ruling as to the issue before this court was based on the language of the agreement.  This court has . . . held that parol evidence is not admissible where terms of a contract are complete and unambiguous."); *see also Sea Star Line, LLC v. Access Transp. & Logistics*, No. 3:04 CV 202 J 25HTS, 2005 WL 1926658 at *3 (M.D. Fla. Aug. 11, 2005) (". . . [T]he Court finds that even if the depositions at issue were obtained, they would not be helpful to Seastar because the Contract at issue is not ambiguous; deposition testimony regarding the Contract's interpretation would not be considered by the Court.").

The insurance policy clearly specifies what interior condominium features and components are excluded.  Thus, the scope of coverage extending to individual condominium units is controlled by the unambiguous exclusionary provision found in the policy.  Therefore, policy coverage does not extend to replacement and service cost of air conditioning systems servicing individual units and repair for wall coverings, including painting and wallpaper, and the associated masking.

In response to Defendant's motion, Plaintiff argues that if the Court determines Fla. Stat §

---

[5]Even though the policy does not mention the word "hurricane," the language stated in the policy under the causes of loss section for windstorm and hail damage is strikingly similar to the language found in Fla. Stat. § 627.4025(2)(a).  However, even if the coverage for windstorm damage was construed as providing hurricane coverage, I find that application of Fla. Stat. § 718.111(11)(b)(3) would not conflict with Fla. Stat. § 627.4025(2)(a).  Instead, hurricane coverage would be provided for interior damage to the extent that it is not specifically excluded under the policy endorsement incorporating Fla. Stat. § 718.(11)(b)(3).  Therefore, the scope of coverage would be the same, regardless of whether the court found that the policy provided hurricane insurance because the specific coverage limitations would still apply.

718.111(b)(3) language controls, the Court should also review Royale's Association Bylaws to determine the extent of coverage. To support this, Plaintiff relies on *Mayfair House Association v. QBE Insurance Corp.*, No. 07-80628-CIV, 2008 WL 4097663 (S.D. Fla. Aug. 29, 2008). (Pl.'s Mem. of law in Opp'n to Def.'s Mot. for Summ. J. at 16). The *Mayfair House* court stated: "Because QBE has thus expressly incorporated the Association's governing documents (including condominium by-laws) into its policy when defining what constitutes a covered 'building,' it is necessary for the court . . . to determine the meaning of the language used in the Association's governing documents and by-laws." *Mayfair House Assoc.,* 2008 WL 4097663 at *3. However, this case is distinguishable because the policy between Royale and Aspen did not incorporate Royale's Bylaws. Although both the Bylaws and Florida law required Plaintiff to obtain hazzard insurance, it does not follow that once insurance coverage is obtained, the Bylaws are automatically included within the coverage. Further, even if Royale's Bylaws were included within the policy, the Bylaws do not specify the scope of coverage for individual condominium units.

      D.      **Coverage for Interior Water Damage**

Defendant argues that coverage for interior water damage is excluded unless water entered the structure through damage caused by a windstorm. (Def.'s Mem. of Law in Supp. of Mot. for Partial Summ. J. at 13). Defendant relies upon *Fla. Windstorm Underwriting v. Gajwani*, 934 So. 2d 501 (Fla. 3d DCA 2005). The *Gajwani* court noted that the policy included a damage exclusion: "We will not pay for loss or damage to the interior of any building or structure . . . caused by rain, snow, sleet, sand or dust, whether driven by windstorm or not, unless the direct force of Hurricane, other Wind, or Hail damages the building or structure causing an opening in the roof or wall and the rain, snow, sleet, sand or dust enters through this

opening. *Gajwani*, 934 So. 2d at 505-6. The insured did not present any evidence that rain entered through an opening due to a covered cause, in fact, "[t]he only evidence presented . . . was that the rain which entered the Gajawanis' homes was driven through window and sliding glass door openings, and seeped through second floor patio tiles and cracks in the stucco." *Id*. at 506. The *Gajwani* court concluded that coverage should be denied because the exclusion provision was not void as against public policy. *Id*. at 507.

The policy between Aspen and Royale contains a very similar exclusion under the covered cause of loss section:

> 4. Windstorm or Hail, but not including:
> . . . .
>    c. Loss or damage to the interior of any building or structure, or the property inside the building or structure, caused by rain, snow, sand or dust, whether driven by wind or not, unless the building or structure first sustains wind or hail damage to its roof or walls through which the rain, snow, sand or dust enters.

(Insurance Policy at 21).

Therefore, Defendant argues that the policy does not provide interior water damage coverage unless the building first sustains damage by wind, and water comes into the building through the damaged area.

Further, Defendant maintains, relying upon *N.H. Ins. Co. v. Carter,* 395 So. 2d 52 (Fla. 1st DCA 1978), that the policy does not include protection if water damage was caused by the entry of water through manmade openings. The *Carter* court noted coverage should be denied, under an exclusion similar to the one in this case, when rain leaked through the roof solely because the insured had removed the structure's protective shingles. *Carter*, 395 So. 2d at 54. Defendant argues that "as in Carter, any roof openings, or roof damage, with respect to the goosenecks and associated openings created to convey air conditioning lines, were originally

caused by man and not windstorm." (Def.'s Mem. of Law in Supp. of Mot. for Partial Summ. J. at 17). Defendant relies upon statements made by Daniel Heyer, an engineer retained by Defendant to inspect damages, when contending that goosenecks are part of the air conditioning system. *Id*. at 15. Heyer, stated in deposition, "water can get into these buildings . . . around the air conditioner stand legs and through the areas . . . around those air conditioners [and] . . . from missing goosenecks that are part of the air conditioning system . . . ." (Heyer's Dep. at 174). Plaintiff counters that goosenecks are part of the roof, relying upon the affidavit of Carlos Martell. Martell states:

> After reviewing the Florida Building Code (2004), I can unequivocally confirm that the term "Goosenecks" that INSURANCE COMPANY refers to in its motion for summary judgment is a device that is part of the roofing system that is used for ventilation purposes and that it was being used for 'roof penetration flashing' on the roofs of THE BUILDINGS comprised of ASSOCIATION.

(Martell's Aff. at ¶ 5) (emphasis in original).

Therefore, inspectors who viewed the goosenecks have differing opinions as to whether goosenecks are part of the air conditioning system or the roof. The Court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied. *Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1140 (11th Cir. 2007) (citing *Carlin Commc'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)). Since a disputed material fact exists as to the classification of gooseneck components, I find that this is a question for the fact finder and summary judgment should be denied as to this issue.

IV.   **CONCLUSION**

For the reasons set forth above, Defendant's Motion for Partial Summary Judgment [DE 106] is **GRANTED**, ***in part***, as follows: (1) insurance contract is a named perils policy and Plaintiff has the burden of pleading that loss suffered is due to a named peril; (2) policy excludes

coverage based upon the enforcement of an ordinance or law and Defendant is not liable for costs to replace entire roofs, as the amount payable to Plaintiff to comply with Florida Building Code § 1521.4 is specified in the policy under the increased cost of construction provision; (3) and here, the unambiguous exclusion language incorporating Fla. Stat. § 718.111(11)(b)(3) into the policy determines the scope of coverage for individual condominium units.  Defendant's Motion for Summary Judgment for classifying gooseneck components as part of the air conditioning system is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 24th day of March 2009.

_____
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*The Hon. Ted E. Bandstra*
*Counsel of Record*